IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING

**SEAN M. PRICE,**

        Petitioner-Defendant,

v.

**Civil Action No.: 5:14-CV-27**
**Criminal Action No.: 5:11-CR-29**
**(STAMP)**

**UNITED STATES OF AMERICA,**

        Respondent-Plaintiff.

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

On February 24, 2014, Petitioner-Defendant Sean M. Price ("Petitioner" or "Defendant"), acting *pro se*, filed a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody [ECF No. 57][1] (the "Petition"). On February 27, 2014, the Court entered an Order Directing Respondent to Answer the Petition [ECF No. 60]. Subsequently, on March 25, 2014, Respondent-Plaintiff ("Respondent" or "Government") filed its Response to the Petition [ECF No. 63]. The matter is now before the undersigned United States Magistrate Judge for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR PL P 2. For the reasons set forth below, the undersigned recommends that the Petition be denied.

---

[1] Throughout this Report and Recommendation, all ECF numbers refer to entries in the docket of Criminal Action No. 5:11-CR-29.

## II. BACKGROUND

**A. Conviction, Sentence and Appeal**

On July 12, 2011, a federal grand jury returned a one-count criminal indictment against Petitioner (the "Indictment"). Indictment, ECF No. 1. In the Indictment, Petitioner was charged in Count One with "[a]ccessing with intent to view child pornography," in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2). Id. at 1. The Indictment contained a forfeiture allegation. Id. at 2. On August 25, 2011, without entering into a written plea agreement, Petitioner filed a Notice of Intent to Plead Guilty, professing that he would plead guilty to Count One of the Indictment and the forfeiture allegation. Notice of Intent to Plead Guilty, ECF No. 20.

On August 29, 2011, a Federal Rule of Criminal Procedure 11 ("Rule 11") plea hearing was held before Senior Judge Frederick P. Stamp, Jr. Order, ECF No. 23. Petitioner was represented during this hearing by Brendan S. Leary, an Assistant Federal Public Defender. Plea Tr. at 1, ECF No. 46. At the start of the plea hearing, Petitioner was asked several preliminary questions. In response to these questions, Petitioner testified that he was thirty-five years old and had attended "some college," although he possessed "no degrees." Id. at 4:8-12. Petitioner further testified that, while he had taken Zoloft, an antidepressant, and an anti-anxiety medication the evening before the plea hearing, the medications did not interfere with his ability to understand the proceedings or to fully participate in the proceedings. See id. at 5:3-9. Additionally, Petitioner testified that the medications were prescribed by a physician and that, except for a "[s]light headache," he was not experiencing adverse effects from the medications. Id. at 4:25-5:2.

While answering Judge Stamp's preliminary questions, Petitioner testified that he was "disabled." Id. at 4:13. Petitioner's counsel, Mr. Leary, explained that Petitioner possessed "a significant history of mental illness," for which Petitioner had received treatment in the past.[2] Id. at 6:2-24; 7:11. Regarding Petitioner's current mental status, Mr. Leary stated that "[Petitioner] has indicated he is receiving some minimal amount of treatment at the Northern Regional Jail" but that, despite this treatment, "he is hearing voices." Id. at 7:12-16. However, Mr. Leary further stated:

> MR. LEARY: Number one, I believe in my professional opinion that [Defendant] is competent. I have not asked this Court for a competency evaluation under 4241. I believe he understands the nature of the charges. I believe he--and he has been consulting with me.
>
> I do not believe, secondly, that [Defendant] suffers from an insanity defense under [Title] 18, United States Code, Section 17. I think he understands the nature and the quality of the charges and his behavior at the time he committed the offense. . . .
>
> Your Honor, I am satisfied that [Defendant] is here today in his right mind and I think after the Court inquires at the conclusion of this hearing, that it will conclude that the plea is knowing and voluntary, notwithstanding the treatment that he is currently receiving at the jail. But I just wanted this Court to be aware that I have been working with the Marshal Service and the medical staff down there to try to make certain that he is getting the appropriate treatment for his mental illness. Thank you, your Honor.

Id. at 7:17-8:13.

After responding to Judge Stamp's preliminary questions, Judge Stamp and Petitioner discussed the federal sentencing guidelines. Petitioner testified that Mr. Leary had discussed the federal sentencing guidelines with him, explained how they applied to his case and explained "other sentencing factors." Id. at 11:22-12:1. Petitioner further

---

[2] When asked "where . . . and when" Petitioner had received treatment for his mental conditions, Petitioner's counsel stated that his "research has indicated [Petitioner] did an inpatient stay at Kerrville State Hospital, Kerrville, Texas; Cambridge State Hospital, Cambridge, Ohio; Weirton Medical Center in Weirton; Healthways in Weirton; Jefferson Behavioral Health in Steubenville; and Eastern State Hospital, Spokane, Washington." Plea Tr. at 6:17-23, ECF No. 46.

3

testified that he understood the sentencing judge could not impose a greater sentence than the statutory maximum sentence, which Judge Stamp reviewed with Petitioner. Id. at 10:23-11:15; 12:2-6. Finally, Petitioner testified that he understood that the sentencing judge could "vary or depart from the [g]uidelines" and that, if "the sentence imposed upon [him was] more severe than [he] had hoped for or expected, . . . [he would still] be bound by [his] guilty plea" and would not be able to withdraw his plea. Id. at 12:25-13:15.

Judge Stamp and Petitioner also discussed the rights that Petitioner was waiving by entering a guilty plea. Specifically, Petitioner testified that he understood that, by pleading guilty, he was waiving "some important civil rights, such as the right to vote, the right to serve on a jury, the right to own or possess a firearm, and the right to hold public office." Id. at 13:16-24. Petitioner further testified that he understood that he was waiving his rights, *inter alia*, to: a jury trial; confront the witnesses against him; suppress evidence that he believes was improperly obtained against him; testify at trial; present evidence on his own behalf at trial; a unanimous jury verdict and be found guilty beyond a reasonable doubt. Id. at 14-15. After discussing these rights, Petitioner testified that he fully understood the consequences of his guilty plea. Id. at 16:14-17. Likewise, Mr. Leary stated that "[Petitioner] and I met on July 19, July 20, August 9, August 17, August 25, and today, August 29th" and that, "[b]ased on those conferences, I do believe [Petitioner] understands the consequences [of his plea]." Id. at 16:18-25; 17:1.

Toward the end of the plea hearing, the Government established a factual basis for Petitioner's guilty plea. Id. at 18-22. To establish a factual basis for the plea, the Government presented the testimony of Sergeant James E. Kozik of the West Virginia

State Police. Id. After Sergeant Kozik's direct examination, Mr. Leary cross-examined Mr. Kozik. Id. at 22:14-24.

After a factual basis for Petitioner's guilty plea was established, Petitioner pleaded guilty to Count One and to the forfeiture allegation of the Indictment. Id. at 23:16-18. Subsequently, the following colloquy occurred between Judge Stamp and Petitioner:

> THE COURT: Has the guilty plea you have just given me been the result of any threat or coercion or harassment of you by anybody at any time?
>
> THE DEFENDANT: No.
>
> THE COURT: Are you pleading guilty to protect anybody?
>
> THE DEFENDANT: No.
>
> THE COURT: Has anybody promised or predicted to you what the exact sentence is going to be that you are going to receive?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Do you understand none of us know what the exact sentence is going to be until we get the presentence report and then analyze it under the advisory [g]uidelines, along with other sentencing factors; and do you understand that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Do you believe that your attorney, Mr. Leary, has adequately and effectively represented you throughout all of these matters?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Do you believe that your attorney has left anything at all undone that you think he should have done on your behalf?
>
> THE DEFENDANT: No, sir. . . .
>
> THE COURT: And are you, in fact, guilty of the crime charged in the indictment? In other words, did you do it?

THE DEFENDANT: Yes, sir.

Id. at 23:19-24:23. Following this colloquy, Judge Stamp concluded that, *inter alia*, Petitioner was competent to enter a guilty plea, the plea was entered into freely and voluntarily and Petitioner was aware of the consequences of his plea. Id. at 24:24-25:3. Petitioner did not object to these findings. See id. at 25-26.

On December 19, 2011, a sentencing hearing was held before Judge Stamp. Judgment, ECF No. 36. During this hearing, Judge Stamp "calculated [Petitioner's] offense as involving more than 600 images of child pornography, and as a result, imposed a five-level sentencing enhancement pursuant to [Guidelines] Sections 2G2.2(b)(7)(D)." United States v. Price, 711 F.3d 455, 457 (4th Cir. 2013). Judge Stamp, consequently, sentenced Petitioner to 120 months of imprisonment followed by ten years of supervised release. ECF No. 36 at 2-3. Subsequently, on January 3, 2012, Petitioner filed a Notice of Appeal, challenging the five-level sentencing enhancement. Notice of Appeal, ECF No. 38.

On November 30, 2012, Petitioner filed a Motion for a New Trial Based on Ineffective Assistance of Trial Counsel, which Judge Stamp construed as a § 2255 motion. Order of Dismissal at 1, ECF No. 51. When reading the motion, Judge Stamp noted that "the issues raised by [Petitioner] in his § 2255 motion are not uniquely separable and collateral from a decision on the merits of his [direct] appeal." Id. at 2. Therefore, on March 8, 2013, Judge Stamp dismissed Petitioner's § 2255 motion without prejudice as premature.[3] Id.

On March 29, 2013, The United States Court of Appeals for the Fourth Circuit

---

[3] The arguments raised in Petitioner's first § 2255 motion are largely similar to the arguments raised in the Petition. See Mot. for a New Trial, ECF No. 49.

6

denied Petitioner's direct appeal and affirmed Petitioner's sentence. Price, 711 F.3d at 457. On April 22, 2013, the Fourth Circuit's judgment went into effect. Mandate, ECF No. 55. Petitioner did not file a certiorari petition to the United States Supreme Court. Petition at 2, ECF No. 57.

### III. DISCUSSION

#### A. Contentions of the Parties

In the Petition, Petitioner raises four grounds for relief. ECF No. 57. First, Petitioner argues that his Sixth Amendment right to effective assistance of counsel was violated when Mr. Leary failed to ensure that Petitioner fully understood the federal sentencing guidelines and the rights he was waiving by pleading guilty. Id. at 5. Second, Petitioner argues that his Fifth Amendment right to remain silent was violated when he was forced to incriminate himself "under duress and during a psychotic non-medicated state." Id. at 6. Third, Petitioner argues that his Fifth Amendment right to remain silent was violated when he was "coerced into pleading guilty by promises and misleading statements of possible lesser sentences made to [him] by [Mr. Leary]." Id. at 8. Finally, Petitioner argues that his Sixth Amendment Right to effective assistance of counsel was violated when Mr. Leary failed to perform his own investigation of the case and when Mr. Leary failed to request that Petitioner undergo an independent mental evaluation. Id. at 10. Petitioner requests that the Court "remand for re-sentencing to a sentence of [sixty] months." Id. at 13.

In its Response to the Petition, Respondent argues that the Petition should be denied. Resp. at 9, ECF No. 63. Specifically, Respondent argues that Petitioner forfeited his second and fourth grounds for relief because: (1) Petitioner failed to fully

7

and adequately allege facts justifying the relief sought and (2) Petitioner's guilty plea prevents him from "litigating anything occurring prior to the plea." Id. at 3. As for Petitioner's first and third grounds for relief, Respondent argues that Petitioner "has not made and cannot make the requisite showing . . . to overcome the formidable barrier that attaches to the statements made during his plea colloquy indicating his plea was knowingly and voluntarily made." Id.

**B.     Legal Standards**

    **1.  Ineffective Assistance of Counsel Claims**

The United States Supreme Court has set forth a two-pronged test for courts to use when determining whether a convicted defendant's claim of ineffective assistance of counsel warrants reversal of the conviction. Strickland v. Washington, 466 U.S. 668, 687 (1984). First, "the defendant must show that counsel's performance was deficient." Id. Second, "the defendant must show that the deficient performance prejudiced the defense." Id. These two prongs are commonly referred to as the "performance" and "prejudice" prongs. Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1297 (4th Cir. 1992).

To satisfy the "performance" prong, the defendant must show that counsel was objectively unreasonable. Strickland, 466 U.S. at 688. In other words, the defendant must show that "counsel made errors so serious that counsel was not functioning as the counsel guaranteed . . . by the Sixth Amendment." Id. at 687 However, a reviewing court does not "grade" the counsel's performance and a strong presumption exists that the "counsel's conduct falls within the wide range of reasonable professional assistance." Carter v. Lee, 283 F.3d 240, 249 (4th Cir. 2002). Essentially, the reviewing court must not "second-guess" counsel's performance and must "evaluate counsel's

performance from counsel's perspective at the time." Hunt v. Lee, 291 F.3d 284, 289 (4th Cir. 2002).

To satisfy the "prejudice" prong, the defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687. Consequently, if counsel's errors have no effect on the judgment, the conviction should not be reversed. See id. at 691. A defendant who alleges ineffective assistance of counsel following a guilty plea has an even higher burden: "he must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988). The Fourth Circuit has recognized that, if a defendant "cannot demonstrate the requisite prejudice, a reviewing court need not consider the performance prong." Fields, 956 F.2d at 1297.

**2. Statements Made During a Plea Hearing**

In Blackledge v. Allison, 431 U.S. 63 (1977), the United States Supreme Court stated that a "defendant's sworn representations made at a Rule 11 plea hearing carry a strong presumption of verity and constitute a formidable barrier against any subsequent collateral proceedings." Blackledge, 431 U.S. at 74. The Court further stated that a less stringent rule would "allow indiscriminate hearings in federal post-conviction proceedings . . . [and] would eliminate the chief virtues of the plea system–speed, economy, and finality." Id. at 71. Therefore:

> [G]uilty pleas are not normally subject to collateral attack, but can be so challenged on the ground that the plea was not knowing or voluntary. A defendant may attack the voluntary nature of his plea by demonstrating that he received ineffective assistance of counsel. However, *in the absence of extraordinary circumstances*, . . . allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made

> during a properly conducted Rule 11 colloquy are always palpably incredible and patently frivolous or false.

Dodson v. United States, No. 1:08-CR-53-2, 2013 WL 4401385, at *15 (N.D. W. Va. Aug. 15, 2013) (citations omitted) (emphasis added).

**C.     Analysis of the Petition**

    **1.  Whether Petitioner's Grounds for Relief are Procedurally Defaulted**

Generally, "issues that could have been raised on direct appeal, but were not, may not be later raised in a collateral attack such as a § 2255 motion." Stevenson v. United States, 594 F. Supp. 2d 695, 701 (N.D. W. Va. 2009). However, two exceptions to this rule exist. First, ineffective assistance of counsel claims may be raised in a § 2255 motion. See United States v. Hoyle, 33 F.3d 415, 418 (4th Cir. 1994) (stating that ineffective assistance of counsel claims are "best left to collateral review" because "the record [on direct appeal] is usually inadequately developed"). Second, claims in which the defendant can show either "cause and actual prejudice or that he is actually innocent" may be raised in a § 2255 motion. Higginbotham v. United States, No. 1:09CR117, 2013 WL 2154810, at *6 (N.D. W. Va. May 17, 2013). To establish cause, a defendant must show "something external to the defense, such as the novelty of the claim." Id. To establish actual prejudice, a defendant must show that the error worked to his or "actual and substantial disadvantage, rather than just creating a possibility of prejudice." Id. (citations omitted). Finally, to establish actual innocence, a defendant must show that "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." Id.

In the present case, Petitioner failed to raise the arguments contained in the Petition in his direct appeal. However, Respondent concedes that "no procedural issues

. . . bar this action." ECF No. 63 at 2. Therefore, the merits of each of Petitioner's grounds for relief will be examined in turn.

### 2. The Merits of Petitioner's Claims

#### a. First Ground for Relief

For his first ground for relief, Petitioner contends that his Sixth Amendment right to effective assistance of counsel was violated when Mr. Leary failed to ensure that he fully understood the federal sentencing guidelines and the rights he was waiving by pleading guilty. ECF No. 57 at 5. Petitioner explains that his lack of understanding was caused by his mental disability and because he "was not medicated correctly at the time of [the plea and sentencing] hearings."[4] Id. Respondent counters by arguing that Petitioner fails "to overcome the formidable barrier that attaches to the statements made during his plea colloquy indicating his plea was knowingly . . . made." ECF No. 63 at 3.

The undersigned finds that Petitioner's first ineffective assistance of counsel claim is without merit for several reasons. First, Petitioner's allegations of ineffective assistance of counsel are palpably incredible and patently frivolous. Petitioner testified during the Rule 11 plea hearing that Mr. Leary "ha[d] adequately and effectively represented [him]" and that Mr. Leary had not "left anything at all undone that [he thought Mr. Leary] should have done on [his] behalf." ECF No. 46 at 24:10-17. Petitioner further testified that Mr. Leary had discussed the federal sentencing guidelines with him and explained how they applied to his case and that he understood that the sentencing judge could "vary or depart from the [g]uidelines." Id. at 12:25-13:15. Finally, after Judge Stamp thoroughly reviewed each right that Petitioner would waive

---

[4] Petitioner offers no support for his contention that he was incorrectly medicated during his plea and sentencing hearings.

by pleading guilty, Petitioner testified that he understood the rights he was waiving and the consequences of pleading guilty. Id. at 13:16-16:17. These statements carry a strong presumption of verity. Because Petitioner fails to allege any extraordinary circumstances explaining why the allegations in the Petition contradict his statements at the plea hearing, Petitioner fails to overcome the presumption of verity.

Second, Petitioner fails to meet his burdens under the Strickland two-pronged test. Regarding the "performance" prong of the test, Petitioner fails to allege any specific act of Mr. Leary's that objectively falls outside of the wide range of reasonable professional assistance. While Petitioner argues that Mr. Leary "did not make sure [he] understood fully the sentencing guidelines that [he] fell under and the rights [he] was waiving by pleading guilty," Petitioner's sworn statements at the Rule 11 plea hearing indicate otherwise. ECF No. 57 at 5. However, assuming *arguendo* that Petitioner meets the "performance" prong of the test, Petitioner still fails to meet the "prejudice" prong. Indeed, Petitioner fails to allege that, had Mr. Leary ensured that Petitioner fully understood the federal sentencing guidelines and the rights he was waiving by entering a guilty plea, Petitioner would not have entered a guilty plea. Therefore, Petitioner's first ground for relief is without merit and should be denied.

    **b.   Second Ground for Relief**

For his second ground for relief, Petitioner contends that his Fifth Amendment right to remain silent was violated when he was forced to incriminate himself "under duress and during a psychotic non-medicated state." ECF No. 57 at 6. Respondent counters by arguing that Petitioner's second ground for relief is forfeited because Petitioner failed to allege facts justifying the relief sought. ECF No. 63 at 3. Additionally,

Respondent argues that Petitioner is "prevent[ed] . . . from litigating anything occurring prior to the plea." Id.

The undersigned finds that Petitioner's self-incrimination claim is without merit. Petitioner never specifies to which statement he is referring. In fact, Petitioner fails to allege any facts to support his claim at all. Instead, Petitioner asks the Court to accept his unsupported generalized assertion on its face. Consequently, it is not clear whether Petitioner is referring to: (1) his statement at the Rule 11 plea hearing that he was in fact guilty of the crime charged in Count One of the Indictment or (2) a statement made during the pre-indictment investigation.

Assuming Petitioner is referring to his statement at the plea hearing, Petitioner's allegations directly contradict his sworn statements at the Rule 11 plea hearing. Petitioner testified during the plea hearing that he had not been coerced into entering his plea and that he was able to understand the proceedings and fully participate in the proceedings. See ECF No. 46 at 5:3-9; 23:19-22. Because Petitioner fails to allege any extraordinary circumstances explaining why the allegations in the Petition contradict his statements at the plea hearing, Petitioner's allegations are deemed palpably incredible and patently frivolous.

Assuming, however, that Petitioner is referring to a pre-indictment statement, Petitioner may no longer challenge the statement. See Tollett v. Henderson, 411 U.S. 258, 267 (1973) ("[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights

13

that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was [unconstitutionally deficient]."). Therefore, Petitioner's second ground for relief is without merit and should be denied.[5]

### c. Third Ground for Relief

For his third ground for relief, Petitioner contends that his Fifth Amendment right to remain silent was violated when he was "coerced into pleading guilty by promises and misleading statements of possible lesser sentences made to [him] by [Mr. Leary]." ECF No. 57 at 8. Petitioner explains that "[c]oercion would not be a difficult task at that time due to my mental disability and my [incorrectly]-medicated state of mind." Id. Respondent counters by arguing that Petitioner fails "to overcome the formidable barrier that attaches to the statements made during his plea colloquy indicating his plea was . . . voluntarily made." ECF No. 63 at 3.

The undersigned finds that Petitioner's coercion claim is without merit for several reasons. First, Petitioner's allegations of coercion are palpably incredible and patently frivolous. During the Rule 11 plea hearing, Petitioner testified that his guilty plea was not "the result of any threat or coercion or harassment." ECF No. 46 at 23:19-22. Petitioner further testified that: no one had "promised or predicted to [him] what the exact sentence" would be in his case; no one knew what the exact sentence would be until

---

[5] Pursuant to Rule 8 of the Rules Governing § 2255 Cases, a magistrate judge may conduct any hearings necessary when referred a § 2255 petition from a district judge. However, the undersigned finds that holding an evidentiary hearing to determine if any facts support Petitioner's self-incrimination claim is unwarranted. See Estelle v. United States, No. 5:12-CR-20-6, 2015 WL 5016475, at *11 (N.D. W. Va. Aug. 24, 2015) ("[A] "habeas corpus defendant is entitled to an evidentiary hearing only to resolve disputed issues of *material fact*." Additionally, a petitioner must present a colorable claim to relief by showing that alleged additional facts, if true, would at least arguably compel granting of [the] writ. . . . [However,] a hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations.").

14

analyzing the presentence report; the sentencing judge possessed the authority to vary or depart from the federal sentencing guidelines and, if the sentencing judge chose to vary or depart from the guidelines, Petitioner would remain bound by his guilty plea. Id. at 12:25-13:15; 24:1-9. These statements carry a strong presumption of verity. Because Petitioner fails to allege any extraordinary circumstances explaining why the allegations in the Petition contradict his statements at the plea hearing, Petitioner fails to overcome the presumption of verity. Second, as previously discussed in Part III.C.2.a, Petitioner fails to allege any specific act of Mr. Leary's that objectively falls outside the wide range of reasonable professional assistance. Therefore, Petitioner's third ground for relief is without merit and should be denied.

### d. Fourth Ground for Relief

Finally, for his fourth ground for relief, Petitioner contends that his Sixth Amendment right to effective assistance of counsel was violated in two ways. ECF No. 57 at 10. First, Petitioner contends that his constitutional right was violated when Mr. Leary chose to rely "on [the] prosecution's file only" instead performing his own investigation of the case. Id. Second, Petitioner contends that his constitutional right was violated when Mr. Leary failed to request that Petitioner undergo an independent mental evaluation.[6] Id. Respondent counters by arguing that Petitioner forfeited his fourth ground for relief because he failed to allege facts justifying the relief sought and because he is "prevent[ed] . . . from litigating anything occurring prior to the plea." ECF No. 63 at 3.

---

[6] Mr. Leary opted not to hire an expert to evaluate Petitioner's mental status or conditions, relying instead on medical records from Petitioner's prior claim for disability that he had received from the Social Security Administration. See Def.'s Sent'g Mem. at 2-4, ECF No. 28.

15

Initially, the undersigned finds that, because Petitioner pleaded guilty in a Rule 11 plea hearing, Petitioner may not challenge the actions of his counsel that occurred prior to the Rule 11 plea hearing. See Tollett, *supra*. Instead, Petitioner "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was [unconstitutionally deficient]." Id. Nevertheless, the undersigned will examine the merits of Petitioner's second ineffective assistance of counsel claim.

The undersigned further finds that Petitioner's second ineffective assistance of counsel claim is without merit for several reasons. First, Petitioner's allegations of ineffective assistance of counsel are palpably incredible and patently frivolous. As previously stated in Part III.C.2.a, Petitioner testified during his Rule 11 plea hearing that he believed that Mr. Leary "ha[d] adequately and effectively represented [him]" and that Mr. Leary had not "left anything at all undone that [he thought Mr. Leary] should have done on [his] behalf." ECF No. 46 at 24:10-17. These statements carry a strong presumption of verity. Because Petitioner fails to allege any extraordinary circumstances explaining why the allegations in the Petition contradict his statements at the plea hearing, Petitioner fails to overcome the presumption of verity.

Second, Petitioner fails to meet his burden under the Strickland two-pronged test. Regarding the "performance" prong of the test, Petitioner fails to allege any specific act of Mr. Leary's that objectively falls outside of the wide range of reasonable professional assistance. Mr. Leary obviously did not believe that an independent investigation of the case was warranted. Mr. Leary also stated during the Rule 11 plea hearing that had researched Petitioner's mental treatment history and that, in his professional opinion,

16

Petitioner did not meet the requirements of an insanity defense and was competent to enter a guilty plea. Id. at 6:17; 7:17-8:13. While Petitioner argues that he would have liked Mr. Leary to take more actions in his case than Mr. Leary chose to do, Petitioner's sworn statements at the Rule 11 plea hearing indicate otherwise. However, assuming *arguendo* that Petitioner meets the "performance" prong of the test, Petitioner still fails to meet the "prejudice" prong. Petitioner fails to allege that, had Mr. Leary performed an independent investigation of his case or requested an independent mental evaluation of Petitioner, Mr. Leary would have learned a material fact that would have prevented Petitioner from pleading guilty. Therefore, Petitioner's fourth ground for relief is without merit and should be denied.

## IV.    RECOMMENDATION

For the foregoing reasons, I **RECOMMEND** that Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody [ECF No. 57] be **DENIED** and that the § 2255 proceeding be **DISMISSED WITH PREJUDICE**.

Within fourteen (14) days after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable Frederick P. Stamp, Jr., United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727

F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to provide a copy of this Report and Recommendation to the parties who appear *pro se* and all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

Respectfully submitted this 16th day of March, 2016.

_____
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE